*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0107P (6th Cir.)
File Name: 00a0107p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---



Robin Laderach,
 *Plaintiff-Appellant,*

 *v.*

U-Haul of Northwestern
Ohio and Robert Gilray,
 *Defendants-Appellees.*

No. 99-3155

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 98-07122—James G. Carr, District Judge.

Argued: November 22, 1999

Decided and Filed: March 27, 2000

Before: KEITH, CONTIE, and NORRIS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Keith J. Winterhalter, VASSAR, DILLS & DAWSON, Toledo, Ohio, for Appellant. William A. Nolan, SQUIRE, SANDERS & DEMPSEY, Columbus, Ohio, for Appellees. **ON BRIEF:** Keith J. Winterhalter, VASSAR, DILLS & DAWSON, Toledo, Ohio, for Appellant. William

1

A. Nolan, Jill S. Kirila, SQUIRE, SANDERS & DEMPSEY, Columbus, Ohio, for Appellees.

CONTIE, J., delivered the opinion of the court, in which KEITH, J., joined.  NORRIS, J. (pp. 10-11), delivered a separate concurring opinion.

————————————

## OPINION

————————————

CONTIE, Circuit Judge.    Plaintiff-appellant Robin Laderach ("Laderach") appeals the summary judgment dismissal of her sex discrimination and wrongful discharge action against her former employer, defendant-appellee U-Haul of Northwestern Ohio ("U-Haul"), and her former supervisor, defendant-appellee Robert Gilray ("Gilray").  We reverse the district court's January 8, 1999 Order and remand this action to district court.

## I.

On May 24, 1996, Laderach began working for U-Haul as a part-time transfer driver at its Alexis Road (Toledo) headquarters.[1]  U-Haul is a wholly-owned subsidiary of U-Haul International, the world's largest truck and equipment rental network.  U-Haul is U-Haul International's retail and marketing arm for Northwestern Ohio, Northeastern Indiana, and Southeastern Michigan, and U-Haul's employees are subject to U-Haul International's policies and procedures.  Defendant-appellee Robert Gilray oversees all aspects of U-Haul's operations.[2]

————————————

[1] The Alexis Road facility includes a rental center and repair shop where U-Haul trucks and equipment are serviced.

[2] Gilray reports to U-Haul International.

Nor do I find it "suspicious" that U-Haul dismissed plaintiff despite her record of promotions and pay raises.  The extent of plaintiff's financial mismanagement came gradually to light; furthermore, the promotion that she sought went to a better qualified individual.  The fact that the district court analyzed plaintiff's evidence as circumstantial rather than direct makes no difference in evaluating defendant's nondiscriminatory explanation for its employment actions.  As just noted, direct evidence of discrimination merely suffices to establish a *prima facie* case, which shifts the burden of production to the employer to come forward with a non-pretextual reason for its decision.  *Burdine*, 450 U.S. at 254-56.  However, the burden of persuasion ultimately rests with plaintiff.  Given the evidence presented to this court, it strikes me as unlikely that plaintiff will be able to meet this burden.

Accordingly, I view our decision to remand this action somewhat expansively.  Except that the district court should consider that plaintiff presented direct evidence of discrimination, it remains free to revisit the Title VII burden-shifting scheme in its entirety, including the nondiscriminatory explanation offered by U-Haul for its decision.

_____

## CONCURRENCE

_____

ALAN E. NORRIS, Circuit Judge, concurring. While I do not object to this cause being remanded to the district court in order to allow it to analyze plaintiff's direct evidence of discrimination, I write separately in order to stress that the district court remains free to entertain a subsequent motion for summary judgment after it has performed this analysis.

It seems to me that the majority implies that, once a plaintiff has come forward with direct evidence of discrimination, a defendant is precluded from presenting a legitimate reason for its employment decision. This is not the case. While a plaintiff may establish a *prima facie* case of discrimination by presenting direct evidence of intentional discrimination by the defendant, *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995), this merely shifts the burden to the employer to produce evidence from which a reasonable trier of fact could conclude that its actions were taken for legitimate nondiscriminatory reasons. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). If the employer provides a well-supported explanation, the burden of production shifts back to the plaintiff to show that the proffered reasons were merely a pretext for discrimination. *Id.* at 256. The plaintiff always bears the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against her. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

Based upon the evidence submitted to this court, I believe that defendant U-Haul came forward with a well-supported explanation for the adverse employment actions taken against plaintiff. Specifically, it strikes me as inconceivable that this court would expect an employer to promote (or retain) an employee whose mismanagement of her financial responsibilities resulted in significant losses to the employer.

As a part-time transfer driver, Laderach drove the company's trucks between rental centers when necessary. In June 1996, U-Haul promoted Laderach to part-time detailer and part-time office clerk. In August 1996, U-Haul promoted Laderach to full-time senior office clerk in the repair shop. As senior office clerk, Laderach was responsible for the repair shop's accounts payable and inventory. Laderach reported to Neil Fliehmann, the repair shop manager, prior to his departure in November 1996. Following Fliehmann's departure, Laderach did much of the clerical work normally done by the repair shop manager. In the absence of a repair shop manager, Laderach reported directly to Gilray

On December 2, 1996, Laderach wrote a letter to Gilray asking to be considered for the repair shop manager position. Two men also applied for the repair shop manager position: George Bennett and Wendell Waggoner. Bennett was a mechanic in U-Haul's repair shop; Waggoner operated a Marathon Oil station that included towing and repair shop operations. On February 17, 1997, Gilray hired Waggoner to be the repair shop manager. That same day, Gilray terminated Laderach. Laderach's duties were assumed by two women: Amy Gordon and Susan Cooper.

On March 6, 1998, Laderach filed a four-count complaint against U-Haul and Gilray alleging: sex discrimination in violation of 42 U.S.C. § 2000e-2 (Count I); sex discrimination in violation of Ohio Rev. Code § 4112.02 (Count II); a violation of federal and state public policies against sex discrimination (Count III); and intentional infliction of emotional distress (Count IV). In support of her claim, Laderach asserted that: she was qualified for the position that she sought; she had a flawless employment record with U-Haul prior to her termination; a repair shop manager from Detroit, David Moore, encouraged her to apply for the position because he felt, after working with her for some time, that she was qualified to manage the repair shop; Gilray admitted that he did not promote her to the repair shop manager position because of her sex; and Gilray stated that

"women are not mechanically inclined." Laderach also asserts that she was treated differently than the men she worked with on two occasions immediately preceding her termination. Specifically, Laderach asserts that she was told to report for work, and the men she worked with were given the days off, when the walls and ceiling in the repair shop were painted, and again when the floor in the repair shop was stripped and resealed. Accordingly, Laderach asserts that the defendants' discriminatory conduct resulted in her exposure to hazardous paint and chemical fumes.

In response, U-Haul and Gilray assert that Laderach was fired because of her poor performance, not because of her sex. Specifically, the appellees assert that Laderach's data entry errors resulted in inaccurate inventory records that forced U-Haul to write-off almost $100,000 of inventory following Laderach's firing. Moreover, the appellees assert that many vendors complained about Laderach's failure to pay for parts supplied to the repair shop. Moreover, the appellees assert that Laderach was not qualified for the repair shop manager position because she lacked management experience and mechanical expertise. The appellees also assert that Laderach's numerous promotions and pay raises during her employment with U-Haul belie her discrimination claim.[3]

On January 8, 1999, the district court granted the defendants' motion for summary judgment and dismissed all of Laderach's claims. Laderach filed her timely notice of appeal on February 3, 1999.

prove that her sex played a part in the appellees' decisions notwithstanding her lack of mechanical and management experience and her alleged data entry errors.

Because Laderach presents direct evidence of discriminatory animus that the appellees failed to refute, we **REVERSE** the district court's January 8, 1999 Order granting the appellees' motion for summary judgment, and we **REMAND** Laderach's action to the district court for further consideration.[4]

---

[3]The record reveals that Laderach's salary with U-Haul increased from $5.00 per hour to $8.25 per hour.

---

[4]In light of our decision to reverse and remand this action to district court, we need not address Laderach's claim that her discharge violated public policy.

those reasons would be that the applicant or employee was a woman." *Id.* at 250 (footnote omitted). Accordingly, Laderach must prove that her sex played a part in the appellees' decision not to promote her to the repair shop manager position. *See Cesaro v. Lakeville Community School District*, 953 F.2d 252, 254 (6th Cir. 1992) ("Whether plaintiff's case is characterized as a pretext case or a mixed motive case, plaintiff's burden is to prove her gender played a part in the board's decision not to hire her as Director of Special Education.").

Laderach's direct evidence of discriminatory animus included Ken Hale's testimony that, on two occasions, Gilray told him that he would not promote Laderach to the repair shop manager position because of her sex. Hale, the shop foreman, also testified that Gilray did not want Laderach to answer "hotline" telephone calls because "women are not mechanically inclined." Laderach also points to the appellees' refusal to give her time off like her male coworkers when the repair shop's walls were painted and the floors were stripped and sealed.

Though the appellees assert that "[i]t defies logic that only one month after promoting Laderach to the Senior Clerk position . . . Gilray would remove Laderach from this same position simply because she is a woman," Appellees' Brief at 12, Laderach asserts that, prior to her termination, she was never disciplined or counseled by the appellees. If Laderach's assertions are true, the appellees' sudden decision to terminate her after months of promotions and pay raises is suspicious when considered together with the discriminatory statements attributed to Gilray.

Though the appellees also assert that summary judgment was appropriate because they articulated legitimate business reasons for not promoting Laderach to the repair shop manager position (*i.e.,* less experience than the candidate selected) and for terminating her (*i.e.,* problems with her job performance), we disagree because Laderach may be able to

## II.

### *Standard of Review*

We review a district court's order granting summary judgment *de novo*. *Grand Traverse Band of Ottawa & Chippewa Indians v. Director, Michigan Dep't of Natural Resources*, 141 F.3d 635, 638 (6th Cir.), *cert. denied*, 119 S. Ct. 590 (1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Accordingly, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "When reviewing a grant of summary judgment, this court must confine its analysis to the evidence which was before the district court." *Landefeld v. Marion General Hosp., Inc.*, 994 F.2d 1178, 1181 (6th Cir. 1993) (citation omitted).

### *Laderach's Claims Against U-Haul and Gilray*

On appeal, Laderach alleges that U-Haul and Gilray discriminated against her because of her sex in violation of 42 U.S.C. § 2000e-2 and Ohio Rev. Code § 4112.02. Because the elements and legal standards for establishing unlawful sex discrimination are the same under Ohio Rev. Code § 4112.02 and under 42 U.S.C. § 2000e-2, *Little Forest Medical Center of Akron v. Ohio Civil Rights Comm'n*, 61 Ohio St. 3d 607, 609-10 (1991), we need not analyze Laderach's sex discrimination claims separately under state and federal law. *See Norbuta v. Loctite Corp.*, 181 F.3d 102 (6th Cir. 1999) (unpublished) ("[T]his court need not analyze Norbuta's claims regarding sex discrimination and sexual harassment separately under federal and state law" because the Ohio

Supreme Court "has held that the elements and legal standards for establishing unlawful sex discrimination under Ohio Revised Code § 4112.02(A) are the same as those under Title VII.").

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the United States Supreme Court set forth the evidentiary framework for analyzing workplace discrimination actions. Under the *McDonnell Douglas* burden-shifting analysis, a plaintiff bears the burden of establishing by a preponderance of the evidence a *prima facie* case of discrimination (*i.e.*, a presumption of discrimination). A plaintiff satisfies this burden by proving: (1) membership in a protected class; (2) that she suffered an adverse action; (3) that she was qualified for the position; and (4) that she was replaced by, or treated differently than, someone outside the protected class. *Id.* at 802. Once the plaintiff establishes a *prima facie* case, an inference of discrimination arises. The burden of proof then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Id.* Once established, the burden shifts back to the plaintiff to prove that the employer's articulated nondiscriminatory reason for its action was merely pretext for unlawful discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). In other words, the plaintiff must prove "that the [employer's] asserted reasons have no basis in fact, that the reasons did not in fact motivate the discharge, or, if they were factors in the [employer's] decision, that they were jointly insufficient to motivate the discharge." *Burns v. City of Columbus*, 91 F.3d 836, 844 (6th Cir. 1996) (citations omitted). The *McDonnell Douglas* burden-shifting analysis also applies to "failure to promote" discrimination claims. *See Brown v. State of Tennessee*, 693 F.2d 600, 603 (6th Cir. 1982) ("[T]o make out a *prima facie* [failure to promote] case the plaintiff must show that she belongs to a protected group, that she was qualified for and applied for a promotion, that she was considered for and denied the promotion, and that other employees of similar qualifications who were not members of the protected group

were indeed promoted at the time the plaintiff's request for promotion was denied.") (citation omitted).

In this action, the district court found that Laderach failed to present an issue of material fact with respect to the fourth element of her claim because she failed to show that her qualifications were similar to Mr. Waggoner's qualifications. In other words, the district court held that Laderach failed to establish a *prima facie* case of sex discrimination under the *McDonnell Douglas* burden-shifting analysis. We disagree. Though it is true that Laderach lacked management experience and her mechanical background was limited, Laderach established an issue of material fact with direct evidence of discrimination sufficient to defeat the appellees' motion for summary judgment.

"In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999) (citations omitted). *See Norbuta v. Loctite Corp.*, 181 F.3d 102 (6th Cir. 1999) (unpublished) ("[D]irect evidence proves the existence of a fact without any inferences or presumptions."). *See also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (evidence that requires the jury to infer a fact is not direct evidence). "Once there is credible direct evidence, the burden of persuasion shifts to the defendant to show that it would have terminated the plaintiff's employment had it not been motivated by discrimination." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d at 926 (citations omitted).

In *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), the Supreme Court held: "In saying that gender played a motivating part in an employment decision, we mean that, if we asked the employer at the moment of the decision what its reasons were and if we received a truthful response, one of