*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0002P (6th Cir.)
File Name: 03a0002p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JOHN C. LAUTERMILCH,
          *Plaintiff-Appellant,*

          *v.*

FINDLAY CITY SCHOOLS,
          *Defendant-Appellee.*

No. 01-3502

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 00-07248—James G. Carr, District Judge.

Argued: October 29, 2002

Decided and Filed: January 3, 2003

Before: SILER and MOORE, Circuit Judges;
          McKINLEY, District Judge.[*]

———————————

**COUNSEL**

**ARGUED:** David A. Bryan, WASERMAN, BRYAN, LANDRY & HONOLD, Toledo, Ohio, for Appellant. C. Philip Baither III, ROBISON, CURPHEY & O'CONNELL,

————————————————

[*] The Honorable Joseph H. McKinley, Jr., United States District Judge for the Western District of Kentucky, sitting by designation.

1

Toledo, Ohio, for Appellee. **ON BRIEF:** Francis J. Landry, WASERMAN, BRYAN, LANDRY & HONOLD, Toledo, Ohio, for Appellant. C. Philip Baither III, ROBISON, CURPHEY & O'CONNELL, Toledo, Ohio, for Appellee.

SILER, J., delivered the opinion of the court, in which McKINLEY, D. J., joined. MOORE, J. (pp. 8-11), delivered a separate opinion dissenting in part.

———————

## OPINION

———————

SILER, Circuit Judge. Plaintiff John C. Lautermilch appeals the district court's grant of summary judgment to Defendant Findlay City Schools ("the Schools"). For the reasons stated below, we **AFFIRM**.

### I.

In 1996, Lautermilch began working as a substitute teacher for the Schools. Like other substitute teachers, Lautermilch did not sign a contract for employment with the Schools.

In 1998, Principal Kathleen Crates and Assistant Principal Michael Kuri decided that Lautermilch would not be called again as a substitute teacher. They had several concerns regarding Lautermilch's behavior as a substitute teacher, including acting inappropriately with young people, tutoring a female student at his home, telling inappropriate jokes in the classroom, and commenting on the size of a female teacher's breasts. In addition, a student had reported Lautermilch as saying to her "Lips who [sic] touch alcohol may not touch mine, but it does not rule out any other part of my body."

Lautermilch states that he did tutor a female student in his home, and that he had made the "lips who touch alcohol" comment without "that vulgar addition to the end of it." Lautermilch states that at a November 1998 meeting, Principal Crates told him that he was "too macho" and that

situation Lautermilch is allegedly exhibiting too much of the male gender stereotype when his behavior is described as "too macho." Because I believe it is inconsistent to protect a woman from discrimination on the basis that she is not acting "like a woman" or conversely acts "too much like a woman," while failing to protect a man accused of acting "too manly," I respectfully dissent. Under either scenario the plaintiff is suffering sex discrimination by the application of harmful gender stereotypes.

When a plaintiff comes forth with direct evidence of gender discrimination, the defendant has the burden of persuasion to show that it would have terminated the plaintiff absent the discriminatory motive. *Jacklyn*, 176 F.3d at 926. In the instant direct evidence case, questions of fact remain. *See, e.g.*, *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000) (holding that racially discriminatory statements that serve as direct evidence of discrimination create genuine issues of material fact). I do not contest that the Schools certainly have produced some evidence of Lautermilch's impropriety with the students. Nonetheless, a quintessential fact question remains regarding what actually motivated Principal Crates in her decision to terminate Lautermilch. This question is one for the trier of fact to resolve, not for the court on a motion for summary judgment.

employ a particular female teacher because she was "too feminine." Under these circumstances it is relatively clear that the majority would have reached a different result. *See generally Price Waterhouse v. Hopkins*, 490 U.S. 228, 235 (1989) (permitting a woman to prove that her gender played a part in an adverse employment decision through statements including that she was not "feminine" enough to become a partner and that she was "macho"); *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 355 (3d Cir. 1999) (noting that Title VII plaintiffs should not have to prove that they were replaced by someone outside their class because sex discrimination nonetheless can exist when an employer favors some gender-based characteristics within a sex over others); *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 874 (9th Cir. 2001) (applying *Price Waterhouse* to a situation where a man is accused of behaving too femininely). The Principal's word choice, telling Lautermilch that he would not be rehired as a substitute teacher because he was "too macho," as opposed to telling him he was "too male," should not be the basis for a different finding. Moreover, the fact that Lautermilch was punished for exhibiting an ordinarily favored gender stereotype, maleness, should not distinguish this case from one where the punishment is for failing to live up to an accepted gender role. *Cf. Pivirotto*, 191 F.3d at 355 (including within the definition of discrimination situations where "[a]n employer may act on gender-based stereotypes, firing women it perceives as not feminine enough (or as too feminine), or discharging women who are too aggressive while not doing the same to male employees").

Both *Price Waterhouse* and the current situation involve employees accused of behaving "too manly" — in the former case a female plaintiff was told to act more like a woman and in the instant case a male plaintiff was told to act less like a man. *See Price Waterhouse*, 490 U.S. at 235. This is directly analogous to a situation where a woman and a man are both discriminated against for behaving too femininely. *See Nichols*, 256 F.3d at 874. The only marked difference is that in *Price Waterhouse* and *Nichols* the plaintiffs are not conforming to gender stereotypes, whereas in the current

Principal Crates "spit the word macho out as if it was distasteful." Since then, the Schools have not called Lautermilch to be a substitute teacher.

In 2000, Lautermilch sued the Schools in the Northern District of Ohio, alleging sex discrimination, due process violation, First Amendment violation, and various state law claims. The district court granted the Schools' motion for summary judgment on all claims.

## II.

This court reviews a district court's grant of summary judgment *de novo*. *See Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir. 1999). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Under this standard, the court must determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson*, 477 U.S. at 252. In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### Due Process

The Fourteenth Amendment prohibits state actors from depriving an individual of life, liberty, or property without due process of law. Lautermilch argues that the the Schools did not afford him due process before depriving him of his property interest in his job as a substitute teacher.

In *Bailey v. Floyd Bd. of Educ.*, 106 F.3d 135 (6th Cir. 1997), this court reviewed the standard for finding a protected property interest in government employment:

The existence of a property interest depends largely on state law. Government employment amounts to a protected property interest when the employee is entitled

to continued employment. Neither mere government employment nor an abstract need or desire for continued employment will give rise to a property interest. Rather, a property interest exists and its boundaries are defined by rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 141 (internal quotes and citations omitted).

Under Ohio law, substitute teachers have no property interest in their continued employment:

Teachers may be employed as substitute teachers for terms not to exceed one year for assignment as services are needed to take the place of regular teachers absent on account of illness or on leaves of absence or to fill temporarily positions created by emergencies; such assignment to be subject to termination when such services are no longer needed.

* * *

Teachers employed as substitutes on a casual or day-to-day basis shall not be entitled to the notice of nonre-employment prescribed in section 3319.11 of the Revised Code . . . .

O.R.C. § 3319.10.

Even without a statutory property interest, Lautermilch could claim a property interest in his employment had such an interest been conferred by contract. *See Bailey*, 106 F.3d at 141. Here, because Lautermilch did not enter into a written contract with the Findlay City Schools, he is an "at will" employee. *See Henkel v. Educ. Research Council of America*, 334 N.E.2d 118, 119 (Ohio 1976) ("The modern rule is that in the absence of facts and circumstances which indicate that the agreement is for a specific term, an employment contract which . . . makes no provision as to the duration of the

discrimination. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). This is so because "[t]he shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.'" *Id.* (citation omitted).

The Equal Protection Clause prohibits discrimination on the basis of gender — which includes discrimination against males. *See generally Craig v. Boren*, 429 U.S. 190, 197-98 (1976) (applying intermediate scrutiny to statute discriminating against males). According to the Oxford English Dictionary, the word "macho" has its origins in the Spanish language and is defined as "a man; [specifically] a 'tough guy.'" 9 OXFORD ENGLISH DICTIONARY 160 (2d ed. 1989).[1] In direct contrast to the majority, I contend that it is precisely because the gender-based comment was made by the ultimate decision-maker "in the context of a termination hearing," that one reasonably can infer that gender was a motivating factor in Principal Crates's decision. Moreover, the commonplace usage of the word "macho" refers exclusively to behaviors or qualities associated with the male gender. Both the nature of the comment and the manner in which it was delivered suggest that summary judgment was improper because a reasonable juror could find by a preponderance of the evidence that Lautermilch's gender "was at least a motivating factor in the employer's actions." *Laderach*, 207 F.3d at 829.

Suppose Principal Crates had said to an African-American substitute teacher that the Schools were unable to utilize his services because he was "too black," or that she had failed to

---

[1] The definition continues: "also, manliness, virility; an impression of this." 9 OXFORD ENGLISH DICTIONARY 160 (2d ed. 1989). The adjective use of "macho" is defined as "[o]stentatiously or notably manly or virile." *Id.*; *see also* MERRIAM WEBSTER ONLINE, *at* http://www.m-w.com/home.htm (last visited Dec. 17, 2002) ("macho" defined as "aggressively virile"). Further definitions of "macho" include: "assertive or aggressive manliness" and "an assertively virile, dominating, or domineering male." RANDOM HOUSE UNABRIDGED DICTIONARY 1152 (2d ed. 1993).

---

**DISSENT**

---

KAREN NELSON MOORE, Circuit Judge, dissenting in part. I dissent with respect to the majority's disposition of Lautermilch's equal protection claim because Principal Kathleen Crates's comment that Lautermilch was "too macho," made at the time she informed him of the decision to deny him future opportunities as a substitute teacher, constitutes direct evidence of sex discrimination sufficient to defeat the Schools' motion for summary judgment. The majority improperly upholds the district court's grant of summary judgment, concluding that any reasonable person would determine that Principal Crates's remark was merely "critical of Lautermilch's behavior, not his sex or gender." In rejecting Lautermilch's equal protection claim under § 1983, the majority holds that one "offhand comment" does not "require[] the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." The majority ignores the key facts that the "too macho" comment was made by the decision-maker at the termination hearing.

"[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 829 (6th Cir. 2000) (quotation omitted). When a plaintiff comes forth with credible direct evidence of gender discrimination, "the burden of persuasion shifts to the defendant to show it would have terminated the plaintiff" absent the discriminatory motive. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). The majority appears to hold that the "too macho" comment by the decision-maker at the termination hearing does not constitute direct evidence, and even if it were direct evidence the majority concludes that Lautermilch has failed to show pretext. The Supreme Court, however, has made it abundantly clear that the *McDonnell Douglas* test does not apply where the plaintiff presents direct evidence of

employment, is not a contract for one year, but is terminable at will b[y] either party.").

The district court correctly found that Lautermilch has not identified sufficient facts and circumstances from which a reasonable jury could find that he was anything other than an "at will" employee.

*Sex Discrimination*

Lautermilch argues that the district court erroneously analyzed his sex discrimination claims under a Title VII analysis rather than a § 1983 analysis. Although Lautermilch's complaint never mentions Title VII, "[t]o prove a violation of the equal protection clause under § 1983, [a plaintiff] must prove the same elements as are required to establish a disparate treatment claim under Title VII, i.e., under the *McDonnell Douglas/Burdine* framework." *Jachyra v. City of Southfield*, No. 95-1009, 1996 WL 520795, at *3 (6th Cir. September 12, 1996) (citing *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988)).

Under the *McDonnell Douglas/Burdine* framework,

[t]he complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination. This may be done by showing (i) that he belongs to a [protected] minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Once a complainant fulfills his initial obligation, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.*

Once the employer articulates some legitimate, nondiscriminatory reason for the action, the complainant has an opportunity to show that the stated reason for rejection was in fact pretext. *Id.* at 804.

Because Lautermilch has not provided any evidence that he was replaced by someone outside his protected class (one way to fulfill the fourth prong of *McDonnell Douglas*), he has failed to establish a *prima facie* case under the four prongs of *McDonnell Douglas*. Alternatively, Lautermilch seeks to establish his *prima facie* sex discrimination case through direct evidence of discrimination. In *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825 (6th Cir. 2000), this court held that a plaintiff may establish a *prima facie* case of sex discrimination through direct evidence of discrimination. *Id.* at 829. Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* "Once there is credible direct evidence, the burden of persuasion shifts to the defendant to show that it would have terminated the plaintiff's employment had it not been motivated by discrimination." *Id.* In *Laderach*, the plaintiff presented credible direct evidence of discrimination: the shop foreman testified that on two occasions the defendant told him that he would not promote Laderach because of her sex and that he did not want Laderach to answer hotline telephone calls because "women are not mechanically inclined." *Id.*

Lautermilch attempts to hang his entire *prima facie* case on one offhand comment by Principal Crates (that he was "too macho"). This evidence does not "require[] the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions," and, therefore, he has not established a *prima facie* case under *Laderach*. *Id.* Specifically, when the comment is placed in the context of the termination hearing documenting specific allegations of misconduct, any reasonable trier of fact would conclude that the comment was critical of Lautermilch's behavior, not his sex or gender.

Even if Lautermilch had established a prima facie case of sex discrimination, the Schools would be entitled to summary judgment. The Schools have articulated a legitimate, nondiscriminatory reason for Lautermilch's discharge, and Lautermilch has not provided any significant evidence that the stated reasons for his termination were pretextual.

*First Amendment*

In determining whether Lautermilch's speech was constitutionally protected, the court must determine whether Lautermilch's speech can be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers*, 461 U.S. 138, 146 (1983). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147-48. Reviewing the record in a light most favorable to Lautermilch, none of Lautermilch's speech addresses a matter of public concern.

**AFFIRMED**.