RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0427p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LILLIE HORTON,

        *Plaintiff-Appellant,*

    *v.*

FORD MOTOR COMPANY; FORD MOTOR COMPANY
DEFINED BENEFIT MASTER TRUST; FORD MOTOR
COMPANY UAW RETIREMENT PLAN,

        *Defendants-Appellees.*

No. 04-4235

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 03-01200—Lesley Brooks Wells, District Judge.

Submitted: September 22, 2005

Decided and Filed: October 27, 2005

Before: SILER and SUTTON, Circuit Judges; SHARP, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:** Paul Mancino, Jr., MANCINO, MANCINO & MANCINO, Cleveland, Ohio, for Appellants. Jeanne A. Griffin, BAKER & HOSTETLER, Columbus, Ohio, John D. Parker, BAKER & HOSTETLER, Cleveland, Ohio, Benjamin G. Dusing, BAKER & HOSTETLER, Cincinnati, Ohio, for Appellees.

---

**OPINION**

---

    SILER, Circuit Judge. Ruben Horton retired from his position at Ford Motor Company, Defendant, in 1983 at age 53. After Mr. Horton's death in 2002, Plaintiff Lillie Horton sought spousal benefits from Ford as Mr. Horton's common law wife. Ford denied her request and she sought review from the Ford Motor Company-UAW Retirement Board of Administration ("Board"), which also denied her request on the ground that Mr. Horton elected not to provide spousal survivorship benefits. She next brought a cause of action in state court that was removed to the United States District Court for the Northern District of Ohio. The district court granted summary judgment in favor of Ford, finding, among other things, that the Board's decision that Lillie Horton had no right to survivor benefits was not arbitrary or capricious as set forth in *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989).

---

    [*]The Honorable Allen Sharp, United States District Judge for the Northern District of Indiana, sitting by designation.

The facts in this pension dispute are uncontested. We are to determine whether the district court properly interpreted the Retirement Equity Act of 1984 ("REA"), Pub. L. No. 98-397, 98 Stat. 1451 (1984) (codified as amended at 26 U.S.C. § 401(a)(11), 26 U.S.C. § 417 (Internal Revenue Code), and 29 U.S.C. § 1055), and the Employee Retirement Income Security Act of 1974 ("ERISA"), 26 U.S.C. § 401(a)(11)(1982) and 29 U.S.C. § 1055, et seq. (1982). The deciding issue in this case is whether the provisions of the REA (requiring a participant in a pension plan to seek spousal consent to exclude the surviving spouse from pension benefits after the participant's death) apply when the participant retires before the enactment or effective dates of the REA. We hold that the REA is inapplicable, a participant may unilaterally reject spousal benefits under pre-REA ERISA, and that summary judgment was proper. Accordingly, we **AFFIRM**.

## BACKGROUND

Ruben Horton began employment at Ford in 1953. On June 1, 1983, he elected to take early retirement at age 53 with more than 30 years of service. Upon seeking early retirement, he executed the paperwork provided by Ford to participate in the Ford-UAW Plan, a tax-qualified benefit plan funded by the Ford Motor Company Defined Benefit Master Trust ("Trust").[1] The Ford-UAW Plan and the Trust are subject to ERISA, as amended by the REA. Included in Mr. Horton's paperwork was an option to prevent automatic survivorship election form and a Ford-UAW Plan survivor's benefit form. Mr. Horton signed and dated both forms on April 14, 1983. The option to prevent automatic survivorship form rejected the automatic election of a qualified joint survivor annuity ("QJSA"). The QJSA is an annuity payment that provides the plan participant a lifetime annuity, and upon death, provides the surviving spouse with an annuity payment at a rate of no less than 50% (but no more than 100%) of the amount payable during the participant's lifetime. 26 U.S.C. § 417(b). The other document, the Ford-UAW Plan survivor's benefit form, stated that "[i]f employee is legally married at time of application, enter spouse's name in space indicated: otherwise print 'Not Married.'" In the survivor's benefit form, Mr. Horton wrote that he was "Not Married."

On June 30, 1983, Ford mailed the acceptance of his application for retirement benefits, which indicated under the survivorship option that the monthly benefit payable to the surviving spouse one month after the participant's death would be zero. Item 8 in the notice of retirement benefits of employees who retire under plan provides: "If the Survivorship Option Benefit portion of the Notice of Retirement Benefits shows $0.00, it means that you do not have the Survivorship Option." Mr. Horton received pension benefits until his death in 2002.

After Mr. Horton's death, Ms. Horton filed a QJSA claim with Ford and subsequently after denial of that claim, to the Board, which also denied the claim based on "the retirees['] option to prevent automatic survivorship which Mr. Horton signed." As her basis for the claims, Ms. Horton asserted that she and Mr. Horton had continuously lived together from 1955 until Mr. Horton's death in 2002 and that they were married under common law.[2]

In its opinion and order denying Ms. Horton's request for summary judgment and granting Ford's, the district court found that (1) the provisions of the REA are to be applied based on the date of retirement rather than the date of death; (2) pre-REA ERISA law did not require spousal consent to waive survivor benefits; and (3) the Board's decision to deny spousal benefits was neither arbitrary nor capricious.

---

[1] The Ford Motor Company Defined Benefit Master Trust is a qualified trust meeting the requirements of 26 U.S.C. § 401, et seq., and 26 U.S.C. § 501(a).

[2] The district court considered these facts undisputed, and Ford does not contest them.

## ANALYSIS

On August 23, 1984, Congress enacted the REA to modify ERISA. Pub. L. No. 98-397, 98 Stat. 1451 (1984) (codified as amended at 26 U.S.C. § 401(a)(11), 26 U.S.C. § 417, and 29 U.S.C. § 1055). In short, the REA amendments require that tax-qualified defined benefit pension plans offer a QJSA automatically to spouses of participants of pension plans. 26 U.S.C. § 401(a)(11)(A)(i). The fundamental change in ERISA is the requirement that a spouse of a participant in a pension-annuity plan must consent to exclusion. 26 U.S.C. § 417(a)(2). The spouse must knowingly waive the right to receive a QJSA, and consent must either be notarized or witnessed. *Id*.

Generally, the provisions of the REA at issue apply to pension plans effective for the years beginning after December 31, 1984. Pub. L. No. 98-397, § 103, 98 Stat. 1429 (1984). However, the so-called "transitional rule," contained within the effective date rules, includes within the scope of the REA a plan participant if that participant had at least one hour of service (or paid leave "recognized or required to be recognized under the plan for any purpose") on or after August 23, 1984. P.L. 98-397, § 203(a), 98 Stat. 1451 (1984); 26C.F.R. § 1.401(a)-20, Q & A-39 through Q & A-41 (1988). The transitional rule renders the REA applicable and necessitates spousal consent for waiver of a QJSA if a participant performed additional services or received paid leave after retirement and after the enactment date of the REA. *Nelson v. Bank of Boston,* 699 F. Supp. 351, 353 (D.Mass. 1988).

In this case, the mandatory spousal consent rules of the REA simply do not apply by way of the transitional rule. Mr. Horton's last day of employment was May 28, 1983, with his retirement effective as of June 1, 1983. Mr. Horton did not work or receive paid leave on or after August 23, 1984, and Ms. Horton presents no evidence to the contrary. Absent performance of work and receipt of paid leave after early retirement and after the enactment date of the statute, the transitional rule does not apply. Ms. Horton attempts to distinguish *Nelson v. Bank of Boston* from the present case by noting that Mr. Horton did not make a beneficiary designation.[3] Although the significance of this point is hard to discern, she also points out that the participant in *Nelson* died before normal retirement age, and therefore is subject to the rules of the REA. The law in *Nelson* is clear: the participant in a pension plan must have at least one hour of service after August 23, 1983 to invoke the spousal consent provision of the REA. *Id*.

Ms. Horton presents a novel argument that even though Mr. Horton retired early, he reached his normal retirement date after the REA was enacted. Thus, upon reaching normal retirement age, a plan participant is automatically subject to the REA, and its requirement that a surviving spouse consent to exclusion from survivorship benefits. Ms. Horton concedes that this version of the law was not in effect at the time Mr. Horton's annuity began.

She cites *Binks Mfg. Co. v. Casaletto-Burns*, 657 F. Supp. 668 (N.D. Ill. 1986), and *In re: Estate of Leonard Wilson,* 138 Misc. 2d 432, 433 (N.Y. Sur. 1988), for the proposition that the REA amendments apply even though the participant's retirement predated the REA's enactment or effective dates. She contends that *Wilson* holds that the REA amendments "shall be treated as in effect as of the time of such participant's death." 138 Misc. 2d at 433. Therefore, she reasons, as Mr. Horton passed away in 2002, his pension plan is subject to the REA. Although *Wilson* does contain such a quote, it is in reference to the transitional rule requiring either work or paid leave after the enactment date of the REA. *Id*. In *Wilson*, the

---

[3]*Nelson* involved a profit-sharing plan participant who was on paid leave from September 12, 1983 until his retirement on September 30, 1984. The participant changed beneficiaries, naming his second wife as beneficiary under the plan on April 16, 1984. On September 4, 1984, 12 days after the REA's enactment, the participant changed his beneficiaries from his second wife to his two children from his first marriage. The second wife sued the plan trustee claiming that her consent to the change in beneficiaries occurred after the enactment of the REA, and was therefore in violation of the REA. *Nelson* held that under the REA's transitional rule, the spousal consent requirements did not apply unless the participant performed services for the employer after August 23, 1984. But the court also held that under the plan, the participant's paid leave extending past the effective date of the statute was not recognized or required to be recognized under the plan. Therefore the plan provisions permitted substitution of beneficiaries without spousal consent, and the REA did not apply. *Id*. at 353-55.

participant continued working after the enactment date of the REA until his death. *Id*. Therefore, Ms. Horton's citation to *Wilson* is taken out of context and unpersuasive for her proposition. Additionally, *Binks* is also unpersuasive for Ms. Horton's argument that the REA is applied at the date of death. First, the transitional rule does not apply in *Binks*. 657 F. Supp. at 670-671. Second, in *Binks* the plan allowing automatic spousal survivorship was amended retroactively to apply before the participant died. *Id.*

With respect to the Ford-UAW Plan, the only applicable provisions of the REA govern collectively-bargained plans under which the rules became applicable on the last day of the collective bargaining agreement expiring after August 23, 1984, or July 1, 1988, whichever is earlier. The Ford-UAW Plan at the time of Mr. Horton's June 1, 1983 retirement date was subject to a collective bargaining agreement that expired on September 14, 1984, more than 15 months after his retirement date. As of September 14, 1984, the REA would apply prospectively to the Ford-UAW Plan.

### Pre-REA ERISA

The United States Supreme Court held that ERISA only requires that pension plans, if offering benefits in annuity form, "offer a [QJSA] as an option entirely within a participant's discretion." *Boggs v. Boggs*, 520 U.S. 833, 843 (1997). The language of pre-REA ERISA is consistent with *Boggs* as discussed below. *See* 26 U.S.C. § 401(a)(11)(A),(B),(C),(D), and (E) (1982); 29 U.S.C. § 1055(a),(b),(c),(d), and (e) (1982) (providing similar provisions).

First, subparagraph (A) provides that if a plan offers an annuity payment, the plan was required to provide "for the payment of annuity benefits in a form having the effect of a [QJSA]." Second, subparagraph (B), which applies its provisions "notwithstanding" the general rule contained in subparagraph (A), does not require a plan provider offering early retirement benefits before "normal retirement age" to offer a QJSA until the participant reached the earliest retirement age under the plan. A plan provider is required to offer a QJSA for participants electing early retirement, but not until normal retirement age under the plan. The language of the statute neither prohibits offering a QJSA upon early retirement nor does it require that another QJSA be provided upon reaching normal retirement age, if one was provided prior to normal retirement age. Subparagraph (C) provides that if a plan offered early retirement benefits set out in subparagraph (B) and the participant continued to work during the 10 years preceding the normal retirement age, then the plan was required to provide the participant the opportunity to elect a QJSA.

Under subparagraph (E), a plan that provided a QJSA had to provide participants a "reasonable period before the annuity starting date" to elect not to take the QJSA. Subparagraph (E) allows a participant to unilaterally elect not to receive benefits in the form of a QJSA, and does not require notice or consent to the spouse. The legislative history directly states that the election not to receive a QJSA does not require the consent of the spouse. S. Rep. No. 575, at 11 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 2547, 2557.[4]

Similar to her previous argument, Ms. Horton argues that even if the REA does not apply, she is entitled to survivor benefits because Mr. Horton, as her common law husband, died after the normal retirement age of 65. Ms. Horton seems to be arguing that once Mr. Horton attained normal retirement age, any waiver previously signed would be void and would automatically vest her with QJSA. As support, Ms. Horton provides a case citation and a paraphrased version of the same Senate Report cited above that does not support her argument. *See* S. Rep. No. 575, at 11.

---

[4]S. Rep. No. 575 provides

The employee is to be afforded a reasonable opportunity to elect not to receive a qualified joint and survivor benefit before benefit payments begin. This election is effective without regard to whether the participant's spouse consents to the election.

Again she cites *Binks* for the overly-broad proposition that the surviving spouse was entitled to survivorship benefits based on the participant's date of death. 657 F. Supp. at 668. As discussed above, *Binks* mentions the date of a participant's death as being relevant to the retroactive application of a pension plan amendment. *Id.* at 670. Therefore, the date of amendment to the plan naming the surviving spouse as beneficiary and the date of death of the participant was determinative. If death had occurred before the amendment to the plan, the REA would be inapplicable.

Consistent with language contained in *Boggs v. Boggs*, the Ford-UAW Plan offered a QJSA "as an option entirely within a participant's discretion." 520 U.S. 833, 843 (1997) (citing 29 U.S.C. §§ 1055(A),(E) (1982)). The conduct of Ford in providing the QJSA and Mr. Horton's unilateral rejection was consistent with ERISA and *Boggs*.

### Inconsistent Forms, Common Law Marriage, Equitable Estoppel

Ms. Horton points out that Ford provided two arguably inconsistent forms to Mr. Horton. She posits that the conflicting set of forms must have confused Mr. Horton because he could not reject spousal pension benefits if he was unmarried. She asserts that this inconsistency in form renders Mr. Horton's attempt to disclaim survivorship benefits void, but she provides no legal authority for such a proposition. The prevailing law at the time and the terms of the Ford-UAW Plan permitted Mr. Horton to unilaterally reject a QJSA annuity when he retired in 1983. Whether they were legally married does not change Mr. Horton's ability to unilaterally reject naming any beneficiary without regard to marital status. As the district court aptly noted, Mr. Horton was not rejecting spousal benefits; but rather, he was exercising his right not to elect the survivorship option. As there is weak- to-no evidence suggesting that the forms provided by Ford were inconsistent, and no legal authority and no known remedy to void Mr. Horton's election, this claim, as a matter of law, is meritless.

Ms. Horton's final contention is that Ford should be estopped from arguing that because Mr. Horton signed the option to prevent automatic survivorship Ms. Horton is not allowed survivorship benefits based on that document. She claims that because Ford argues that Mr. Horton had no right to a QJSA, it was a misrepresentation to require Mr. Horton to sign the document waiving something that did not exist.

A party triggers equitable estoppel by conduct inconsistent with a position later adopted that prejudices the rights of the other party who detrimentally relied on the prior conduct. *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59 (1984). A party must show:

(1) conduct or language amounting to a representation of material fact;
(2) awareness of true facts by the party to be estopped;
(3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended;
(4) unawareness of the true facts by the party asserting the estoppel; and
(5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Tregoning v. American Comty. Mut. Ins. Co.*, 12 F.3d 79, 83 (6th Cir. 1993) (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991)). Ms. Horton's equitable estoppel claim is also meritless because she cannot show an inconsistent statement by Ford upon which she relied to her detriment. As noted above, Mr. Horton exercised his right under pre-REA ERISA to reject survivorship benefits. Moreover, it is impossible for her to demonstrate that she relied on documents that she did not know existed until after Mr. Horton's death and after she filed suit.

## CONCLUSION

This court reviews the district court's grant of summary judgment *de novo*. *Lautermilch v. Findlay City Sch.*, 314 F.3d 271, 274 (6th Cir. 2003). "Summary judgment is appropriate if there is no genuine issue

of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; *see* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Even viewing all evidence as favorable to Ms. Horton, because this appeal deals solely with the application of the REA and pre-REA ERISA, no genuine issues of material fact were before the district court. Ms. Horton's equitable estoppel and inconsistent forms claims are essentially meritless. The district court's decision that the REA did not apply and that pre-REA ERISA permitted unilateral exclusion of a QJSA was correct.

**AFFIRMED**.