NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0961n.06
Filed: December 14, 2005

No. 04-2188

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DANIEL LEE MERRILL, SR. | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| BURKE E. PORTER MACHINERY CO., | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before:  SILER and SUTTON, Circuit Judges; SHARP, District Judge.[*]

PER CURIAM.  Daniel Lee Merrill, Sr. appeals from the district court's order entering summary judgment in favor of appellee Burke E. Porter Machinery Co. ("BEPCO"), his former employer.  Merrill contends that BEPCO violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (1994), by terminating his employment.  The district court rejected Merrill's claims, concluding that he failed to establish the essential elements of a disability discrimination claim under the ADA.  On appeal, Merrill argues that the district court erred in excluding sworn statements in his complaint, in requiring that disability discrimination be the sole cause of his termination, in failing to find that the facts permit a "reasonable inference" that he was terminated

---

[*]The Honorable Allen Sharp, United States District Judge for the Northern District of Indiana, sitting by designation.

because of his alleged disability, and in finding that his impairment was not a "disability." Because we find that the plaintiff failed to establish a prima facie case of discrimination, we affirm the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

BEPCO, which designs and manufactures large specialized machines, hired Merrill as a mechanical project engineer in May 1997. Merrill reported to mechanical engineering manager Tim Leep. When Merrill became stressed, Leep would allow him to walk around the building, leave work early, work at home, and arrive at work early in the morning when there were fewer distractions.

In September, 1999, Merrill saw psychologist Timothy Zwart. Zwart noted that Plaintiff avoided eye contact. In May, 2000, Zwart concluded that Merrill suffered from Asperger's syndrome, a condition that causes, among other things, avoidance of eye contact. Merrill also began counseling with psychologist Gailord Weeks, who testified that Merrill had problems with interpersonal behavior and eye contact, and that those are symptoms of Asperger's.

In November, 2000, Merrill met with Human Resources Manager Diane Roodvoets and engineering manager Ralph Palmer. Palmer learned at this meeting that Merrill had Asperger's syndrome. According to Merrill, Palmer treated him differently after the meeting, refusing to talk to Merrill in Palmer's office and calling Merrill "stupid."

Merrill was transferred to John Clawson's supervision in December, 2000. In April, 2001, Clawson was moved to a different department and Merrill came under the direct supervision of Palmer. Palmer and Merrill continued to have problems working together. Palmer requested that Merrill redesign a certain machine, but Merrill never did. According to Merrill, when he told Palmer he had not redesigned the machine, Palmer questioned, "[w]hat the h*ll is wrong with you?"

On June 8, 2001, Palmer came to Merrill's work station and said that problems had been raised at a production meeting regarding one of Merrill's designs. After Merrill acknowledged the problems with the parts he designed, Palmer asked him, "why is [sic] there always mistakes on your jobs?" Merrill replied that he could not control the detailers and checkers upon whom he relied. Palmer said that Merrill was "technically incompetent" and could not "draw worth a [expletive deleted]." Merrill then asked Palmer "how would [you] know" and told Palmer: "you are out of line." Palmer then escorted Merrill to the Human Resources office and out of the building, terminating Merrill's employment at BEPCO. Palmer later stated that he terminated Merrill for poor performance, citing repeated design mistakes and Merrill's unwillingness to correct them.

At a review meeting on June 12, 2001 involving BEPCO President Andrew Murch, Roodvoets, Palmer and Merrill, Merrill was asked if he had ever mentioned his disability to any one. Merrill replied: "That was the statement that [Palmer] said that was weird . . . where he said that when he would talk to me I wouldn't hold eye contact with him; that means I can't be

trusted." He also stated that Palmer stated that "when [Palmer] was talking to me out in the shop, I made funny faces at him and . . . that was insubordination in his mind." Merrill was neither reinstated, nor replaced, and his position was not left open.

Merrill, proceeding *pro se*, filed his complaint in the district court in September 2002 and retained counsel in August 2003. Merrill's counsel did not amend Merrill's *pro se* complaint. BEPCO moved for summary judgment on April 2, 2004, and summary judgment was granted in BEPCO's favor on September 2, 2004. This appeal followed.

## II. STANDARD OF REVIEW

This court reviews the district court's grant of summary judgment *de novo*. *Lautermilch v. Findlay City Sch.*, 314 F.3d 271, 274 (6th Cir. 2003). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; *see* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

## III. DISCUSSION

The ADA prohibits an employer from discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures,

the hiring, advancement, or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff may establish unlawful discrimination by introducing direct evidence of intentional discrimination, including evidence that the employer relied on the plaintiff's disability in making its employment decision. *See Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). Where no direct evidence of discrimination exists, a plaintiff must proceed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, a plaintiff may establish a prima facie case of discrimination by showing that: (1) he is disabled; (2) he is otherwise qualified for the position; (3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of his disability; and (5) after rejection or termination, the position remained open, or the disabled individual was replaced by a member outside the protected class. *Monette*, 90 F.3d at 1185. Merrill's claim fails under both methods.

Merrill argues that there is "direct evidence" that he was terminated because of a disability. He testified during a deposition as follows:

> Q      In the meeting that you had with Murch, Palmer and Roodvoets on June 12, did anybody talk about Asperger's Syndrome?
>
> A      I mentioned it not in word, but in – as a disability once.
>
> Q      What did you say?
>
> A      That was the statement that Ralph [Palmer] said that was weird, I thought was really weird, where he said that when he would talk to me I wouldn't hold eye contact with him; that means I can't be trusted. And when he was talking to me out in the shop, I made

> funny faces at him and he said that was insubordination in his mind, and that was – I mean, I just turned to Andy and said, "That's part of my disability. You can't hold that against me."

He argues that the inability to maintain eye contact is a symptom of Asperger's, and that Palmer's reference to that symptom is tantamount to Palmer saying he fired Merrill because of Asperger's. He also argues that Palmer called him "stupid," told him that he wasn't special and would not be treated special, and asked "what the h*ll is wrong with you." These statements, according to Merrill, are direct evidence of discrimination. We disagree.

"Direct evidence" is evidence which, if believed, requires the conclusion that unlawful discrimination was a motivating factor in the employer's decision. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (*en banc*) (citing *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)). "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 548 (6th Cir. 2004) (citations omitted). Palmer never made any reference to disability, and never stated that he terminated Merrill because of a failure to hold eye contact. At best, Palmer's statements show only that he felt Merrill could not be trusted because of his failure to hold eye contact and that the "funny faces" made by Merrill amount to insubordination. The jury, to conclude from these statements that Merrill was fired because of his disability, would have to infer that Palmer's lack of trust in Merrill led to Merrill's termination or that the funny faces were caused by Merrill's disability. They would also have to infer that Palmer knew the avoidance of eye contact to be a symptom of Asperger's. While these conclusions may be reasonable, they are nonetheless conclusions that

must be reached by inference. Palmer's other statements are similarly deficient because they require additional inferences before they can be linked to a disability.[1] *Cf. Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) (noting that direct evidence "would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.'").

Because Merrill lacks direct evidence of discrimination, he must establish a prima facie case of discrimination as established in *McDonnell-Douglas* and outlined above. Merrill admits that he cannot do so, because there is no evidence that he was replaced or that his position was held open. Instead, he argues that a "reasonable inference" of discrimination precludes summary judgment, without the need to apply *McDonnell-Douglas*. Merrill fails to cite any case applying this standard to a disability discrimination claim, however, and such an approach would be inconsistent with the case law of this circuit.[2]

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[1]Merrill also argues that the district court erred in refusing to consider sworn statements made in Plaintiff's complaint. Any error made by the district court on this point is necessarily harmless, however, because the statements offered by Merrill as wrongly excluded fall far short of establishing direct evidence of discrimination.

[2]In light of this conclusion, we need not address Merrill's ability to satisfy the other elements of his prima facie case. Though the parties vigorously dispute whether Merrill was "disabled" within the meaning of the ADA, his failure to satisfy the fifth prong of the prima facie case is fatal. Additionally, we need not address the issue of whether BEPCO provided a non-discriminatory reason for terminating Merrill. That burden does not shift to the defendant unless the plaintiff can first establish his prima facie case. *See Monette*, 90 F.3d at 1185 ("If the plaintiff fails to establish a predicate fact necessary to create the presumption of unlawful intent, technically the 'burden' never shifts to the defendant.").