NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0360n.06
Filed: May 18, 2006

No. 05-3364

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CYNTHIA SULLIVAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF |
| COCA-COLA BOTTLING COMPANY OF | ) | OHIO |
| OHIO/KENTUCKY, | ) | |
| | ) | **O P I N I O N** |
| Defendant-Appellee. | ) | |

BEFORE:   DAUGHTREY and McKEAGUE, Circuit Judges; and McCALLA, District Judge.[*]

**McCALLA, District Judge.**  Plaintiff-Appellant Cynthia Sullivan ("Sullivan") appeals

the district court's grant of summary judgment in favor of Defendant-Appellee Coca-Cola

Enterprises, Inc. d/b/a Coca-Cola Bottling Company of Ohio/Kentucky ("CCE") in Sullivan's

action for employment discrimination and retaliation based on her race and sex.  Sullivan, a

black female, brings claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e et seq., 42 U.S.C. § 1981, and Ohio Rev. Code § 4112.02 et seq.  On appeal, Sullivan

argues that the district court should have denied summary judgment with regard to her

discrimination claims because she was similarly situated to non-minority employees who were

_____

[*] The Honorable Jon P. McCalla, United States District Judge for the Western District of Tennessee, sitting by designation.

1

treated more favorably and because CCE's reasons for terminating her were pretextual. In addition, Sullivan contends that the district court should have considered her retaliation claim under the opposition clause of 42 U.S.C. § 2000e-3. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. Background and Procedural History

Sullivan commenced employment with CCE on October 19, 1998, as an account manager at CCE's Columbus, Ohio, sales center. Sullivan was paid an annual salary of $32,000 and received a company car. New account managers perform various functions, referred to as "swing" duties, before they are assigned to a permanent territorial sales route. As part of her swing duties, Sullivan was required to fill in for other account managers who were absent or on leave. She was also required to service retail accounts, set up displays, and clean stock rooms at customer locations. Upon assuming these duties, Sullivan was initially supervised by Anthony Goolsby, an African-American male.

Sullivan had a "personality conflict" with Goolsby. According to Sullivan, Goolsby had a "foul mouth and he was very disrespectful." At her deposition, Sullivan testified that her interaction with Goolsby was the precipitating event to the instant action. Sullivan claims that Goolsby was "consistently using foul language, giving me wrong information, setting me up on account, and just doing a lot of wrong things to me."

Sullivan complained to CCE's upper management about Goolsby in January 1999. According to Sullivan, the problem was not resolved because the supervisor to whom she complained then left employment with CCE. Sullivan concedes that Goolsby did not evaluate

her performance at any time during her employment.

On April 2, 1999, Timothy Tate replaced Goolsby as Sullivan's supervisor. On April 5, 1999, Tate issued a memorandum to Sullivan stating that he and Goolsby had seen one of Sullivan's promotional displays and that Tate was disappointed in Sullivan's execution of the display at multiple locations. Sullivan conceded at her deposition that the promotional displays were assembled improperly. On April 7, 1999, Sullivan received a memorandum dated March 16, 1999, issued from Goolsby to Tate regarding a "Developmental Plan" for Sullivan for the month of April 1999. In the memorandum, Goolsby stated that he believed this plan would "help [Sullivan] get a better understanding of the overall duties and responsibilities of an Account Manager."

Tate evaluated Sullivan's performance on August 1, 1999. She received a "Needs Improvement" rating in ten out of the fifteen categories evaluated.[1] This rating is defined as "[p]erform[ing] most duties adequately and meet[ing] most standards in an acceptable manner, but improvement is necessary." Sullivan received a "Fully Satisfactory" rating in the categories of Recordkeeping, Job Safety, Sales Presentation, Professional Image, and Communication. Sullivan's overall rating was "Needs Improvement." The evaluation set forth several future goals for Sullivan: to begin her work shift on time; to communicate issues or questions to her assigned manager; to handle various duties as assigned; to work on her listening skills; to make

---

[1] The rating hierarchy consists of the following possible ratings: Outstanding, Commendable, Fully Satisfactory, Needs Improvement and Unsatisfactory. Sullivan received a "Needs Improvement" rating in the following categories: Adaptability, Account Knowledge, Job Knowledge, Customer Relations and Service, Market Development, Merchandising Skills, Initiative, Sales Performance, Time Management Skills, and Interpersonal Skills.

all sales calls; and to have weekly meetings with the account managers whose routes she covered. Sullivan disagreed with the substance of her evaluation, and she responded in a written memorandum. The memorandum made no reference to a claim of discrimination, although Sullivan testified that during a meeting she complained to managers Tim Tate, Doug Davis, and Kevin Johnson that she was being discriminated against on account of her race.

Sullivan contends that, despite the unfavorable evaluation, other district managers had favorable views of her work. In particular, Sullivan notes that district manager Bruce Eddins testified that he found her work to be satisfactory when she filled in for one week for a manager who he supervised. Eddins could not, however, evaluate Sullivan's overall performance. In addition, district manager Steve Rinehart testified that Sullivan filled in for him a few times and did a "pretty good job."

Sullivan received a permanent route on September 15, 1999. On November 1, 1999, Sullivan received her second performance evaluation, this time from Rinehart, who became her supervisor when she received her permanent route. Again, her overall rating on this performance evaluation was "Needs Improvement." Rinehart wrote that Sullivan "needs to become more of a manager as opposed to a task person." Rinehart also stated that Sullivan "needs to focus on the priorities of the business and the every day fundamentals that pertain to her job . . . ." Sullivan received the results of this evaluation in December, but this time did not respond in writing.

In December 1999, shortly after she received her performance evaluation, Sullivan went on disability leave for stress and emotional distress. On March 1, 2000, while Sullivan was on disability leave, a local gas station reported to CCE that Sullivan pumped gas in her company car

but did not pay for it. CCE suspended Sullivan's use of the car pending an investigation. Sullivan was informed on March 27, 2000, that the investigation was complete. She was never charged with a crime or violation of company policy.

On May 8, 2000, CCE notified Sullivan by letter that her short-term disability benefits would expire on June 6, 2000. The letter informed her that in order to continue to receive disability benefits, she was required to apply for long-term benefits. The also letter stated that "[o]nce you have been on Short Term Disability for a total of (6) months, which is June 6, 2000, your employment with Coca-Cola Enterprises, Inc. will be terminated. Long Term Disability will remain in effect as long as you qualify for this benefit or until you are eligible for Social Security." In her deposition, Sullivan testified that she understood the terms of this letter. However, Sullivan did not apply for long-term disability benefits and never reported to work after the expiration of her short-term benefits. As a result, CCE terminated her employment.

Prior to initiating the instant action, Sullivan filed charges of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC"). On December 21, 1999, soon after she went on short-term disability leave, Sullivan filed a charge alleging that CCE retaliated against her by giving her poor performance evaluations and denying her a pay increase because she complained of racial and sexual discrimination . On May 12, 2000, Sullivan filed a second charge of discrimination and retaliation based on CCE's suspension of use of the company car, denial of a pay increase, and wrongful termination. Sullivan received a right to sue letter on September 20, 2000. This action was timely filed on December 19, 2000. CCE moved for summary judgment on all of

Sullivan's claims on March 4, 2004. The district court granted CCE's motion and entered judgment in favor of CCE on February 10, 2005.

## II. Discussion

This Court reviews a district court's grant of summary judgment de novo. Andretti v. Borla Performance Indus., Inc., 426 F.3d 824, 830 (6th Cir. 2005)(citing Smith v. Ameritech, 129 F.3d 857, 863 (6th Cir.1997)). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998). A genuine issue of material fact exists for trial "if the evidence [presented by the

nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In essence, the inquiry is "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  Id. at 251-52.

### A.        Discriminatory Termination

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to

discriminate against any individual with respect to compensation, terms, conditions, or privileges

of employment, because of such individual's race, color, religion, sex, or national origin . . . ."

42 U.S.C. § 2000e-2(a)(1).  A discrimination claim under Title VII may be established using

direct or indirect evidence.  In the absence of direct evidence of discrimination, such claims are

analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green,

411 U.S. 792 (1973), and refined in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248

(1981).  Claims brought under 42 U.S.C. § 1981 and Ohio Rev. Code § 4112.01, et seq., are

subject to the same analysis used in Title VII claims.  Hollins v. Atlantic Co., Inc., 188 F.3d 652,

658 (6th Cir. 1999); see also Noble v. Brinker Int'l., Inc., 391 F.3d 715, 720 (6th Cir. 2004);

Laderach v. U-Haul of Northwestern Ohio, 297 F.3d 825, 828 (6th Cir. 2000)(finding that "the

elements and legal standards for establishing unlawful sex discrimination are the same under

Ohio Rev. Code § 4112.02 and under 42 U.S.C. § 2000e-2").

Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie

case of discrimination.  Burdine, 450 U.S. at 252.  To establish a prima facie case of

discrimination under Title VII, a plaintiff must demonstrate that: (1) she was a member of a

protected class; (2) she was subject to an adverse employment action; (3) she was qualified for the job; and (4) for the same or similar conduct, she was treated differently from similarly situated non-minority employees. Perry v. McGinnis, 209 F.3d 597, 601 (6th Cir. 2000). Once the plaintiff has established a prima facie case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. Burdine, 450 U.S. at 252-53. An employer will satisfy its burden as long as it articulates a valid rationale for its decision. Hartsel v. Keys, 87 F.3d 795, 800 (6th Cir. 1996).

If the employer presents a legitimate, non-discriminatory reason for the adverse action, a plaintiff will survive summary judgment only by raising a genuine issue of material fact as to whether "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253 (citing McDonnell Douglas Corp., 411 U.S. at 804). In order to establish pretext, the plaintiff must show "by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the adverse action], or (3) that they were insufficient to motivate [the adverse action]." Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994)(emphasis in original)(citation omitted). Throughout the analysis, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253.

On appeal, Sullivan first challenges the district court's finding that she did not make a prima facie showing of discrimination on her wrongful termination claim. The district court found that Sullivan had failed to demonstrate that she was treated differently than other

employees to whom she was similarly situated. "[T]o be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)(citations omitted). The plaintiff must put forward evidence "to establish that the other employee's acts were of 'comparable seriousness' to his or her own infraction" in order to withstand a motion for summary judgment. Id. at 583 n.5.

There is no evidence in the record that other employees who were supervised by the same supervisor and who engaged in the same conduct were not terminated. Specifically, Sullivan has failed to come forward with any evidence that other employees exceeded their allotted amount of short-term disability leave, elected not to apply for long-term disability benefits, and were not subsequently terminated. Accordingly, the district court correctly found that Sullivan failed to make out a prima facie case of wrongful termination.

Sullivan also appeals the district court's finding that, even if she had been able to demonstrate a prima facie case of discrimination, she failed to show that CCE's asserted reasons for terminating her were pretextual. However, Sullivan has put forward no evidence that CCE's legitimate, non-discriminatory reason for terminating Sullivan was pretextual.

CCE's employment policy provided that employees could only receive short-term disability benefits for twenty-six weeks. The company's "Sick Pay/Short-Term Disability (STD) Program" manual clearly states that the STD program has a twenty-six week term and explains

that benefits will end after "[y]ou have received benefits under this program for the maximum

period of time." In addition, the manual states:

> If you are disabled and cannot work when your STD benefits end, you
> may be eligible for benefits under the Company's Long-Term Disability
> (LTD) plan. Application for benefits under the LTD Plan should be made
> after the 16th week of your STD benefit period.

Sullivan concedes that she did not apply for long-term disability benefits, that she was on

short-term disability for twenty-six weeks, and that she never resumed work at CCE. She also

acknowledges that she received a letter from CCE advising her that she would be terminated

upon the expiration of her short-term disability benefits.

In support of her pretext argument, Sullivan describes her performance problems and

conflicts with her supervisors. However, these arguments are inapposite and do not establish

that CCE's asserted reason for her termination was a pretext for unlawful discrimination.

Accordingly, we affirm the district court's grant of summary judgment in CCE's favor on

Sullivan's claim of discriminatory wrongful termination.[2]

### B.        Retaliation

Title VII provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to
> discriminate against any of his employees . . . because [the employee] has
> opposed any practice made an unlawful employment practice by this
> subchapter, or because he has made a charge, testified, assisted, or
> participated in any manner in an investigation, proceeding, or hearing
> under this subchapter.

---

[2] Sullivan also notes that she suffered four additional adverse employment actions in her opposition to the motion for summary judgment. The district court failed to consider these claims, and Sullivan does not raise this as error on appeal.

42 U.S.C. § 2000e-3(a).

Sullivan appeals the district court's dismissal of her claim that she received a "Needs Improvement" rating on her second performance evaluation in November 1999 in retaliation for complaining of discrimination in August and September 1999 to CCE management.[3] The district court dismissed this claim on the ground that Sullivan had not exhausted her administrative remedies as required under Title VII, noting that "filing a charge of discrimination is required for claims of retaliation based on conduct occurring before such filing." (Op. and Order, Feb. 10, 2005, docket no. 77, at 20-21.) The court relied on Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 254 (6th Cir. 1998), in finding that because Sullivan had not filed a charge of discrimination with the EEOC prior to filing her charge of retaliation, she had not exhausted her administrative remedies.

In reaching this conclusion, however, the district court misconstrued Abeita's exhaustion requirement. In Abeita, the plaintiff filed an EEOC charge in which she alleged only discrimination. 159 F.3d at 254. The plaintiff subsequently alleged in her federal court complaint that she had been retaliated against prior to the time she had filed her charge of discrimination with the EEOC. Id. In Abeita, we held that while retaliation claims are sometimes exempt from the exhaustion requirement, in cases where "retaliation claims [are] based on conduct that occurred before the EEOC charge was filed," the plaintiff may not bring a federal claim of retaliation without first filing a charge of retaliation with the EEOC. Id.

---

[3] Sullivan appeals the district court's ruling on the ground that the court should have considered her retaliation claim under the opposition clause of Title VII. This argument is inapposite because the district court did not specify the prong of Title VII under which it construed Sullivan's retaliation claim. Nevertheless, because the district court misconstrued Title VII's exhaustion requirement, we consider this claim on appeal.

(emphasis added). Accordingly, we found that the plaintiff should have alleged retaliation as well as discrimination in her EEOC charge, and, because she had failed to do so, she had failed to exhaust her administrative remedies as to her claim of retaliation. Id.

Abeita does not hold that a plaintiff must file a predicate charge of discrimination with the EEOC before filing a charge of retaliation. In contrast to the plaintiff in Abeita, Sullivan properly fulfilled her exhaustion requirements. Under Abeita, Sullivan was required to file a charge of retaliation with the EEOC before filing a complaint alleging retaliation in federal court. 159 F.3d at 254 ; see also Tisdale v. Federal Express Corp., 415 F.3d 516, 527 (6th Cir. 2005). Sullivan complied with this requirement by filing a charge with the EEOC in December 1999, in which she checked the "retaliation" box and alleged that she had been given poor performance evaluations and was denied pay increases in retaliation for her complaints of discrimination. In May of 2000, Sullivan filed a second EEOC charge and checked the box for "retaliation" as well as those for discrimination based on "race" and "sex." In that second charge, Sullivan alleged that she was suspended, denied a pay increase, and terminated because of "my prior charge."

We find that Sullivan properly exhausted her administrative remedies as to her retaliation claim prior to filing suit in federal court. By requiring Sullivan to prove that she filed multiple EEOC charges – one alleging discrimination and another alleging subsequent retaliation – the district court improperly held Sullivan to a higher standard than our precedent requires. Although it should have considered Sullivan's claim of retaliation, the district court's error was harmless because Sullivan is unable to make out a prima facie case of retaliation.

Sullivan claims that she received negative reviews on her second performance evaluation and was denied a pay increase in retaliation for her complaints of discrimination to CCE management.[4] In order to establish a prima facie case of retaliation, Sullivan must show: (1) that she engaged in protected activity; (2) that the exercise of her civil rights was known by the defendant; (3) that defendant thereafter took adverse employment action; and (4) that a causal connection exists between the protected activity and the adverse employment action. Walborn v. Erie County Care Facility, 150 F.3d 584, 588-89 (6th Cir. 1998).

While a triable issue of fact exists regarding whether Sullivan has established the first three elements of her prima facie case, she cannot meet the causation requirement. CCE has put forward substantial evidence demonstrating that Sullivan's job performance was deficient. The record reveals that Sullivan was cited for numerous work-related infractions: violating CCE's vehicle accident policy; having excessive backstock; improperly setting up promotional displays; improperly filling two customer orders, which were subsequently returned; having missing product; and interacting poorly with a customer, who complained that Sullivan "made [him] feel like [he] was 8 years old" and that "he never wanted to see [Sullivan] again," which resulted in Sullivan's removal from the account. In addition, Sullivan received the same rating on both performance evaluations during her tenure at CCE – an overall rating of "Needs Improvement" – which undercuts her contention that her negative performance rating on the second evaluation was retaliatory. Sullivan has put forward no evidence that CCE gave her a poor performance

---

[4] While Sullivan mentions that she suffered other retaliatory adverse employment actions, the district court did not consider these claims, and Sullivan does not specifically challenge the district court's failure to consider them on appeal.

rating <u>because of</u> her protected activities. Without more, Sullivan's bare allegations are insufficient to establish a causal connection, and we affirm the grant of summary judgment on Sullivan's claim of retaliation.

### III. Conclusion

For the foregoing reasons, the district court's grant of summary judgment is AFFIRMED.