**NOT RECOMMENDED FOR PUBLICATION**
File Name: 13a0429n.06

**No. 12-4217**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Apr 29, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CRYSTAL SARVAK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| URBAN RETAIL PROPERTIES, LLC, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

Before: MARTIN, GUY, and MCKEAGUE, Circuit Judges.

**BOYCE F. MARTIN, JR., Circuit Judge.** Crystal Sarvak sued Urban Retail Properties, LLC, alleging that Urban's failure to hire her amounted to discrimination, in violation of both state and federal law, on the basis of gender, age, and her association with her disabled children. Urban moved for summary judgment and the district court granted the motion. Sarvak appeals the district court's judgment. For the reasons below, we AFFIRM the judgment of the district court.

I.

Sarvak worked for Developers Diversified Realty Corp., which managed the Tri-County Mall located in Cincinnati, Ohio. Michael Lyons, the mall's General Manager, hired Sarvak for the full-time property accountant position in June 2007. Developers Diversified's corporate office had a central accounting department and Sarvak's role as the property accountant was to assist or otherwise support various functions of the central accounting department. Lyons gave Sarvak favorable

performance reviews and at least one raise. During Sarvak's employment with Developers Diversified, she made several requests for schedule changes and leave, all of which Lyons granted.

On September 3, 2009, Sarvak requested to take a later lunch hour and to reduce her hours to part-time, "perhaps 32.5 to 35 hours per week." The parties dispute what happened next. Lyons testified that, after checking with his own supervisor, he denied the request for part-time hours because "the position required full-time duties." He said that in early October, he told Sarvak that Developers Diversified "would help her with flex time" but that the position had to remain full time. Sarvak alleges that Lyons never gave her a substantive response. She says that around November 3 or 4, Lyons explained that he had not had time to pass her request along to his supervisors and that he would follow up in a few days. Sarvak then explained to Lyons that, because she had not received a response within a few weeks, she "made arrangements so that she would not need a different schedule."

Sarvak disputes that she requested part-time hours and contends that she merely asked for full-time that was less than "50-55 hours." Sarvak's own written request reveals, however, that she specifically requested to work "part time," suggested "perhaps approx. 32.5 to 35 hours," and indicated that she would be "available to resume full-time status of working 40 hours per week." Sarvak claims that sometime after she requested reduced hours, Lyons discussed the request with her and said, "I honestly don't see how you will be able to balance both, work and being a [] mom with special needs kids . . . ." Sarvak also claims that Lyons told her that his wife stayed at home and home-schooled their five children so that they could give their children "proper care and education."

On November 11, 2009, Coventry Real Estate Advisors, LLC, the owner of the Tri-County Mall, informed Developers Diversified that Urban Retail Properties, LLC, would be taking over the management of the mall as of December 11, 2009. Before Urban was scheduled to assume management, Brian Alper, Urban's Senior Vice President of Human Resources, contacted Lyons to begin arranging the transfer of employees. Lyons previously worked for Urban for several years as the Assistant General Manager at Kenwood Mall in Cincinnati, Ohio, and was familiar with Urban's practices and its accounting system.

Urban was interested in hiring Developers Diversified's employees, and Alper asked Lyons if there was anyone on Developers Diversified's staff whose responsibilities would not fit into the Urban system. Lyons expressed concern to Alper about Sarvak being a good fit at Urban, telling him that Developers Diversified and Urban used different accounting systems and that Sarvak's responsibilities differed substantially from Urban's on-site accountant's responsibilities. Specifically, Lyons explained that Developers Diversified had a centralized accounting department whose functions Sarvak administratively assisted, whereas Urban had field-based accounting that required more in-depth accounting knowledge and familiarity with a different accounting program. Although Sarvak disputes that the positions were substantially different, she acknowledges that Urban used a different accounting program, CTI, than Developers Diversified and that she had not used it. According to Lyons, Urban had implied that they were going to hire him at the time that he made his recommendation to Alper, but he had not received a formal offer of employment at the time.

On November 23, 2009, Alper emailed Patrick Dunne, Vice President and Regional Accounting Manager for Urban, and asked him to speak with Sarvak "to get a feel for what she would be capable of doing by discussing the role that an onsite accountant plays with Urban." Dunne's role in the hiring process was "to interview accountants and then make recommendations whether [Urban] should hire them." Alper's email included Lyons's statement that Sarvak was "not strong enough to do the work which is required." Dunne never spoke to Lyons about Sarvak's qualifications or lack thereof. The following day, Dunne spoke with Sarvak over the telephone and learned from her that she did not "post cash receipts, she did not enter accounts payable, she did not do the rent roll billing, she did not do reconciliation billings and she did not prepare the budget . . . [and] she had not worked with CTI." After interviewing Sarvak, Dunne concluded that Sarvak lacked the necessary experience and skills for Urban's field-based accounting position. He recommended that Urban look for another candidate, and Joe McCarthy, Senior Vice President of Accounting for Urban, approved the recommendation. Dunne did not speak with Lyons, and Lyons was unaware of Urban's hiring decision until later.

On November 24, 2009, Alper emailed Developers Diversified, advising that Urban would not be hiring Sarvak because "[Developers Diversified] does accounting centrally and her capabilities do not seem to be in-line with what we require from our on-site accounting staff." On November 30, 2009, Lyons informed all employees that their positions were being eliminated as of December 10, 2009. He also told Sarvak about Urban's email indicating that Urban would not be hiring her. According to Sarvak, when Lyons told her that Urban would not be hiring her, he said that "the good news" was that as a "working mother" she "may actually want to stay at home with

[her] children and support them." Sarvak was the only Developers Diversified employee about whom Lyons expressed concerns, and Sarvak was the only employee that Urban did not hire.

Urban posted its accounting position on the Internet. Sarvak was aware of this but did not apply for the position because she had already learned that Urban did not intend to hire her. On December 28, 2009, after reviewing dozens of applications, Urban hired Patricia Staley, a 57-year old woman nearly ten years older than Sarvak, for the position. Staley previously worked for Urban as a property accountant and had experience with Urban's CTI accounting system.

On December 28, 2010, Sarvak filed a six-count complaint in federal district court against Developers Diversified Realty Corp., Coventry Real Estate Advisors, LLC, and Urban Retail Properties, LLC, alleging discrimination, in violation of both state and federal law, on the basis of gender, age, and her association with her disabled children. All of the defendants moved for summary judgment, and the district court granted the motions. On appeal, Sarvak only challenges the district court's grant of summary judgment to Urban.

## II.

We review a district court's grant of summary judgment de novo. *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party." *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "While all inferences are drawn in favor of the non-moving party,

that party still must present some affirmative evidence supporting its position to defeat an otherwise appropriate motion for summary judgment." *Tucker v. Tennessee,* 539 F.3d 526, 531 (6th Cir. 2008).

III.

Sarvak argues that the district court erred in holding that she had not presented direct evidence of discrimination. In support of her argument, she points to: 1) Lyons's comment, after she requested a part-time schedule, that he did not see how she would be able to balance work and being a mom of kids with special needs; 2) Lyons's comment that his wife stayed at home and home-schooled their five children so that they could give their children "proper care and education"; and 3) Lyons's comment, after telling Sarvak that Urban would not be hiring her, that "the good news" was that as a "working mother" she "may actually want to stay at home with [her] children and support them."

Given the similarity of the Ohio and federal statutes governing age, sex, and disability discrimination, courts may generally apply federal precedent to employment discrimination claims under Ohio law. *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005) ("[t]he federal Age Discrimination in Employment Act ("ADEA") is applicable to state law claims brought pursuant to Ohio age discrimination law"); *Gettings v. Bldg. Lab. Local 310 Fringe Ben. Fund*, 349 F.3d 300, 305 (6th Cir. 2003) ("[b]ecause the prima facie case requirements are essentially the same under Ohio Revised Code § 4112.02 . . . [plaintiff's] federal and state-law claims of gender discrimination may be disposed together"); *Jakubowski v. The Christ Hospital*, 627 F.3d 195, 201 (6th Cir. 2010) ("analysis of claims made pursuant to the Americans with Disabilities Act applies to claims made pursuant to Ohio Revised Code § 4112.02 . . .").

An employment-discrimination case may be based upon direct or circumstantial evidence. *Johnson v. Kroger Co.*, 319 F.3d 858, 864–65 (6th Cir. 2003). Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Once a plaintiff presents direct evidence of discrimination, the burden shifts to the employer to prove, by a preponderance of the evidence, that it would have made the same decision absent the discriminatory motive. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 346–47 (6th Cir. 2012).

In contrast, for employment discrimination claims based only on circumstantial evidence, the burden-shifting evidentiary framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), as modified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981), applies. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491–92 (6th Cir. 2010). A plaintiff must first establish a prima facie case of employment discrimination. *Id*. The burden then shifts to the employer to "articulate a nondiscriminatory reason for its action." *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 594 F.3d 476, 485 (6th Cir. 2010). If the employer meets its burden, the plaintiff must then rebut the proffered reason by pointing to sufficient evidence that the employer's explanation is pretext for discrimination. *Schoonmaker v. Spartan G. L., LLC*, 595 F.3d 261, 264 (6th Cir. 2010).

As an initial matter, Sarvak argues that we must attribute Lyons's comments to Urban because he was Urban's agent. She claims that, although Lyons had not yet received an offer of employment from Urban when he raised his concerns about her to Alper, Alper had already asked Lyons to help with the transition of employees from Developers Diversified to Urban. Sarvak goes

on to argue that, in spite of the fact that Lyons was not the ultimate decision-maker and that Urban conducted its own investigation, Urban is liable for Lyons's discriminatory motive because Lyons's recommendation not to hire Sarvak was the proximate cause of Urban's ultimate decision not to hire her. Sarvak relies on this Court's decision in *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 350–53 (6th Cir. 2012), in support.

Even assuming that Lyons's statements can be attributed to Urban and that his recommendation to Alper was the proximate cause of Urban's decision not to hire Sarvak, they are not direct evidence of discrimination. Direct evidence of discrimination proves the existence of discriminatory motive without requiring any inferences, *Rowan*, 360 F.3d at 548. Here, one would have to infer from Lyons's comments that his concern about Sarvak's ability to meet the needs of both her job and her disabled children influenced his decision not to recommend Sarvak for the accountant position with Urban. Lyons's only statement that is arguably direct evidence of discrimination is his expression of concern about Sarvak's ability, as a mother of disabled children, to do her job well; however, Lyons made this statement in response to Sarvak's request for a part-time schedule. Lyons merely expressed his belief that, if Sarvak needed to work part-time in order to care for her disabled children, she would not be able to meet the demands of her job. By the time Lyons made his recommendation to Alper, Sarvak had already informed Lyons that she had made arrangements and would not need a part-time schedule.

Lyons's prior treatment of Sarvak as an employee further supports the idea that his comment was not evidence of discriminatory animus toward women with disabled children. Sarvak claims that Lyons knew that at least one of her children had a disability prior to her request for a part-time

schedule, yet Lyons never expressed a concern about Sarvak's ability to balance her responsibilities at work and at home previously. In fact, Lyons consistently gave her positive reviews and even promoted her.

In *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 826–27 (6th Cir. 2000), the plaintiff argued that her former employer, U-Haul, failed to promote her because she was a woman. Another U-Haul employee testified that, on two occasions, the plaintiff's supervisor said that he would not promote the plaintiff because of her sex. *Id*. at 829. In reversing the district court's grant of summary judgment to U-Haul, we held that the supervisor's comments constituted direct evidence of discrimination. *Id*. Unlike Lyons's comments, the supervisor's comments prove the existence of discriminatory motive without requiring any inferences. The district court did not err in finding that Sarvak had not presented direct evidence of discrimination and appropriately applied the *McDonnell Douglass* burden-shifting framework.

IV.

Sarvak claims that the district court erred in holding that she had not presented sufficient evidence to establish that Urban's legitimate, non-discriminatory reason hiring another candidate was pretext for discrimination.

To establish pretext, the plaintiff is required to show, by a preponderance of the evidence, one of the following: (1) that the proffered reason has no basis in fact; (2) that the proffered reason did not actually motivate the adverse employment action; or (3) that the proffered reason was insufficient to motivate the adverse employment action. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d

614 (6th Cir. 2009). Sarvak argues that Urban's proffered reason did not actually motivate its decision to hire someone else for the property accountant position. To show that an employer's proffered reason did not actually motivate its employment decision, the plaintiff must show that "an illegal motivation was more likely than that offered by" the employer. *Id*.

Urban's proffered reason for not hiring Sarvak is that Patrick Dunne's investigation revealed that Sarvak lacked the necessary experience and skills for Urban's field-based accounting system. Specifically, Dunne's phone call with Sarvak revealed that she did not "post cash receipts, she did not enter accounts payable, she did not do the rent roll billing, she did not do reconciliation billings and she did not prepare the budget . . . ." Sarvak also admitted during her conversation with Dunne that she did not have experience with Urban's CTI accounting program. In further support, Urban argues that it hired Patricia Staley as the property accountant because she formerly worked for Urban as a property accountant and had experience with Urban's CTI accounting program.

Sarvak emphasizes her stellar performance record at Developers Diversified and the "perfunctory nature" of the decision-making process in arguing that Urban's proffered reason did not actually motivate its decision to hire a better-qualified candidate. First, Sarvak's prior experience as the property accountant for Developers Diversified does not speak to her suitability for Urban's property accountant position. Urban's field-based accounting system required a different set of skills and experience with the CTI accounting program, a program with which Sarvak did not have experience. Second, given that Dunne was looking for a candidate with a particular set of skills, it is entirely reasonable that he was able to acquire all of the information that he needed during a five to ten minute phone call and then make an informed decision regarding Sarvak's qualifications.

Sarvak also argues that Lyons's comments about her ability to balance her responsibilities as an employee and as a mother with disabled children suggest that an illegal motivation was the more likely reason behind Urban's decision not to hire her. For the reasons already discussed, Lyons's comments do not suggest that there was an illegal motivation behind Urban's decision not to hire Sarvak. If anything, Lyons showed a great deal of belief in Sarvak's ability to do her job well and to be a mother of disabled children, as evidenced by the performance reviews and promotion that he gave her. Lyons, a former Urban employee familiar with Urban's accounting system, simply believed that Sarvak did not have the necessary skills to be a property accountant for Urban. The district court did not err in holding that Sarvak failed to establish that Urban's proffered reason for failing to hire her was pretext for discrimination.

For the aforementioned reasons, we AFFIRM the district court's judgment.